LESS HAWKINS v. THE STATE.

No. 15308. Delivered October 26, 1932.
Reported in 53 S. W. (2d) 780.

The opinion states the case.

*Seb. F. Caldwell,* of Mt. Pleasant, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is burglary; penalty assessed at confinement in the penitentiary for a period of two years.

At night, a glass in the front of the store of Mrs. Fuquay was broken and a dress and hat taken from the building through the hole made in the glass.

The testimony of Ard, the night watchman, was in substance as follows: About 3 o'clock in the morning, the witness was walking on the street and saw Hawkins, the appellant, also on the street. According to his testimony, Ard was walking leisurely in a direction meeting appellant, and saw him walk

up to Mrs. Fuquay's door, throw a brick-bat through the window, then step out and look both ways, and go back "out of my sight" and after a few minutes, he came out before Ard reached the place. From Ard's testimony we quote: "It appeared that he had something in his clothes when he came out of there. * * * When he came out of there he had something in his bosom bulging out there. I was not close enough to tell what it was." The witness hollered and tried to overtake the appellant. Some two or more hours later, Ard and the witness Smith (the sheriff) went to the home of the appellant and arrested him, but found none of the stolen property.

The state's witness (Sip) Harris gave testimony in substance as follows: At the date of the alleged offense, he was a night cook at Hodge's Cafe. He saw the appellant "it seems to me like' it was after midnight." On the night that the offense is charged to have taken place, the appellant was at the cafe and got a chili. From the witness' testimony we quote: "Yes, he paid for it. I don't know what he paid for it. I think he got the chili for dish washing. It might have been a knob off a car that he traded for it, I don't know. I may be mixed up in the time but one time he traded a knob off of a car. One time he traded a knob off a gear shift of a car. He traded it for a chili. It was a kind of ivory knob. I am not certain that that was the same night (as the alleged offense.)"

Smith (the sheriff) got the knob from the witness (Sip) Harris the next morning after the burglary. The sheriff testified: "I returned the knob to Mr. DuBose because he identified it."

The witness Mankin, a deputy constable, testified for the state, in substance, that on the night of the occurrence he saw a man, whom he could not identify, running on a street; that he pursued the man but could not catch him.

The witness Riddle testified on behalf of the appellant that the knob mentioned above had been in the appellant's possession for a month or so, "or one just like it had."

The appellant testified in his own behalf that he was at Hodge's Cafe about 10 or 11 o'clock at night and got a chili; that he exchanged it for a *knob* which he had gotten off his own car; that he went home and retired; that while he was in bed the sheriff and his deputy came to the house and brought him back to town. On cross-examination he was interrogated about the *knob*. He said it was his; that he had had it for a long time; that it did not belong to Mr. DuBose; that he did not need it and brought it to town.

The witness Ard was recalled by the state and testified that he had examined the appellant's car; that it had a black knob on the gear shift lever; that the knob gotten from the restaurant was a white knob.

The testimony about the knob was received over the objection of the appellant, as shown by two bills of exception. It seems that the knob was entirely disconnected from the offense for which the appellant was on trial, and the use made of the knob was to prove by circumstances and by hearsay testimony that appellant possessed and traded for some chili a knob which he had stolen from DuBose. It had no legitimate bearing upon the case on trial. Its effect upon the jury was to show that the appellant had stolen the knob and was therefore a thief, and probably guilty of the offense with which he was charged. The reception of the evidence concerning the knob was obnoxious to the general rule forbidding the introduction of proof of extraneous crimes, and not within any of the exceptions which warrant the reception of such testimony.

Under no phase of the case is it conceived that the testimony that appellant had stolen the knob from DuBose's car relevant upon any issue in the case. Its harmful effect is obvious, and because of its reception, the judgment is reversed and the cause remanded.

*Reversed and remanded.*